February 19th, 1906.

————————o————————

## No. 3818.

Court of Appeal, Parish of Orleans.

## LOUISIANA NAVIGATION AND FISHERIES CO., LTD. vs. NEW ORLEANS, FORT JACKSON AND GRAND ISLE R. R. CO.

This cause involves the interpretation of a written contract in the light of verbal testimony received without objection, showing the intention of the parties thereto and the construction which their conduct has placed upon them; held, that such interpretation must be judicially enforced.

Appeal from Civil District Court, Division "D."

John Dymond, Jr., for Plaintiff and Appellee.

E. Howard McCaleb, for Defendant and Appellant.

DUFOUR, J. The plaintiff's author, one Doullut, having attempted to dig a canal through defendant's road bed and right of way at a point about sixty-five miles below the City of New Orleans, was enjoined by the defendant.

Whereupon, on June 5th, 1901, the parties to the litigation

entered into a contract of compromise by which they settled their differences.

According to its terms, in consideration of the dismissal of the injunction suit, Doullut obligated himself as fololws:

First. To construct a drawbridge over the proposed canal so that luggers engaged in the transportation of oysters might pass.

Second. That the drawbridge should become the property of the railroad company.

Third. That, in addition to paying the cost of construction of the drawbridge "said Doullut promises to furnish at his own cost and expense a keeper for the same, this keeper to perform any other duties which the said Doullut may assign him, provided that they do not conflict with the discharge of his duties as bridge tender."

The question now presented is: Who, under the contract quoted has the right to appoint, nominate or designate "the bridge keeper."

The contract uses the word "furnish," which is defined as follows in the Century Dictionary:

"To provide; supply; to provide for use; make or afford a provision of; supply; yield; to provide for what is proper or suitable; supply with anything; fit up or fit out; equip; to furnish out; to fill out; complete."

It does not appear from this that the word "furnish" is considered by lenicographers as synonymous will appoint, designate or nominate."

In fact, on the face of the contract, and with due reference to the contract, it would seem that the words "furnish at his own cost" were intended to mean to make provision for the payment of a keeper.

But we are not restricted to the face of the contract to determine its meaning, as there is testimony in the record received without objection which enables us to ascertain what construction was placed upon their agreement by the parties themselves. Landry, the superintendent of the defendant company asserts that the right of appointment was understood to be vested in

the latter, and that Bowers, the first bridge keeper, was appointed by him.

..Bowers says that he was appointed by Landry and paid by him.

Doullut in his direct examination insists that the Canal Co. had the right to appoint, but later on answer as follows:

"Q. Did you recommend Bowers to him?

A. Yes, sir.

Q. And he appointed him on your recommendation?

A. I think so; I suppose so.

Q. Isn't it a fact that Captain Landry told you that he had sent word to some one to go down and relieve Joe Bowers, but that, as he hadn't heard from him, the conductor would stop at the Doullut canal and ask Bowers if he wanted to be relieved at once, in which case the conductor would deliver a letter to the section foreman to go and take charge of the bridge?

A. Yes, sir.

Q. Were not instructions given to Conductor Belcher in your presence?

A. Yes, sir.

Q. Did you make any objection to it?

A. No sir, I did not.

Doullut further explains that the above appointment be considered temporary, and that in due time the Canal Company would "recommend" (not appoint) a man to replace Bowers.

It is also shown that the keeper was on the employes' pay roll of the railroad Company and was paid by it.

The presumption that the parties to an agreement intend to conform to and not violate the law, and this emphasizes the view that the right of appointment was intended to abide in the defendant.

The Charter of the railroad vests the appointment of its employe's in a Board which may not lawfully and *inpra vires* delegate such power of appointment to another corporation.

The keeper is an employee of the railroad company in charge of a bridge belonging to it and for the proper management of which, it is responsible to the public.

The right to discharge results from the right to employ; and, the plaintiff's contention would result logically in preventing the railroad company from discharging an employee whose recklessness, neglect or incapacity jeopardized the safety of life or property.

Public safety forbids such a construction and public policy would suggest the annulment of any such contract.

The danger to the public of an open bridge at train time is of greater importance than the harmless delay to luggers resulting from a closed bridge.

A fair construction of the contract, in the light of the whole record, has led us to the conclusion that the bridge keeper is an employee of the railroad company to be appointed and primarily paid by it, that the Canal Company is to return to the railroad company the amount of his wages, and has the right to the services of the keeper, when the rendering of the same does not conflict with his duties as bridge keeper. The liability of defendant to plaintiff for tolls collected is clearly shown, but the defendant is entitled to recover of plaintiff $210 for the keeper's wages unlawfully withheld by it on the theory that it did not owe the wages because it had not appointed Bowers' successor.

The judgment appealed from is reversed and proceeding to render such judgment as should originally have been rendered, it is now ordered that there be judgment in favor of plaintiff, the Louisiana Navigation and Fisheries Company, Ltd., and against the defendant, the New Orleans, Fort Jackson and Grand Isle Railroad Company in the sum of Two Hundred and Forty eight 06/100 dollars, ($248.06/100) with legal interest from judicial demand ,the defendant to pay the costs of the main demand.

It is further ordered that there be judgment in favor of defendant in suit and plaintiff in reconvention and against plaintiff in suit and defendant in reconvention in the sum of Two Hundred and Ten Dollars ($210) with legal interest from judicial demand, plaintiff in suit to pay costs of reconventional demand and the costs of appeal.